1  DARCI E. BURRELL, State Bar No. 180467
   darci@levyvinick.com
2  LETICIA CHAVEZ, State Bar No. 333792
   letty@levinick.com
3  LEVY VINICK BURRELL HYAMS LLP
   180 Grand Avenue, Suite 1300
4  Oakland, CA 94612
   Tel.:  (510) 318-7700
5  Fax:  (510) 318-7701

6  Attorneys for Plaintiff Allison Hokoana

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10 ALLISON HOKOANA,                    )   Case No. 22-CV-00293-JSC
                                       )
11             Plaintiff,              )   **FIRST AMENDED COMPLAINT FOR**
                                       )   **DAMAGES AND**
12      v.                             )   **DEMAND FOR JURY TRIAL**
                                       )
13 ALLIED WASTE SERVICES OF NORTH      )
   AMERICA, LLC, and DOES 1-10, inclusive, )
14                                     )
               Defendants.             )
15                                     )
   _____ )   JURY TRIAL DEMANDED
16

17              **I.      NATURE OF THE ACTION**

18      1.      This is an individual action brought by an employee against her former employer,

19 Allied Waste Services of North America, LLC, alleging violation of the California Fair Employment

20 and Housing Act ("FEHA").  Specifically, Plaintiff Allison Hokoana alleges that Defendant violated

21 the law by subjecting her to discrimination, harassment and retaliation in violation of the FEHA.

22 Plaintiff also alleges a claim for retaliation in violation of California Labor Code section 1102.5.

23                        **II.      PARTIES**

24      2.      Plaintiff Allison Hokoana is, and at all material times was, a resident of San Joaquin

25 County, California.

26      3.      Upon information and belief, Defendant Allied Waste Services of North America, LLC

27 is a corporation incorporated in Delaware, with principal executive offices in Phoenix, Arizona.

28 Plaintiff worked for Defendant in Fremont, California.

4.      In addition to the Defendants named above, Plaintiff sues fictitiously Defendants DOES 1 through 10, inclusive, pursuant to Code of Civil Procedure section 474, because their names, capacities, status, or facts showing them to be liable are not presently known.  Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and such Defendants caused Plaintiff's damages as herein alleged.  Plaintiff will amend this complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained.

5.      Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all times relevant here the agent, servant, employee, and/or representative of the other Defendants and was acting, at least in part, within the course and scope of such relationship and that each and every Defendant herein is jointly and severally responsible and liable to Plaintiff for the damages hereinafter alleged.

## III.    JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. section 1332(a).  This action was removed by Defendant from Alameda County Superior Court pursuant to 28 U.S.C. section 1441(b).

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      On or about September 9, 2021, Plaintiff filed a timely charge of discrimination against Republic Services, Inc. with the California Department of Fair Employment and Housing ("DFEH"). The DFEH issued a right-to-sue letter on this charge on September 9, 2021.  On or about April 19, 2022, Plaintiff filed a timely charge of discrimination against Allied Waste Services of North America, LLC with the DFEH.  The DFEH issued a right-to-sue letter on this charge on April 19, 2022.  A copy of that charge is attached hereto as Exhibit A.

## V.    FACTUAL ALLEGATIONS

8.      Plaintiff Allison Hokoana worked for Defendant as an Operations Supervisor from February 15, 2016 until she was terminated on or about March 2, 2021.  She was the only female Operations Supervisor at her work location.

9.      Throughout Ms. Hokoana's employment with Defendant, she was repeatedly subjected

to unequal treatment in comparison to the male supervisors.  Ms. Hokoana was required to perform more work – including work that should have been performed by other supervisors and managers.  The other supervisors were not required to perform extra work, and, upon information and belief, the male supervisor hired to replace Ms. Hokoana has not been required to perform extra work either.  Yet Ms. Hokoana was held to a stricter standard.  She was repeatedly disciplined for mistakes despite her increased workload and when other supervisors were not disciplined for similar mistakes.

10.     For example, in December 2018, Defendant disciplined Ms. Hokoana for "inappropriate/unprofessional language/joking" with her subordinates even though she did not behave or speak any differently in the workplace than other, male employees.  A driver, Scott Rouse, accused Ms. Hokoana of "aggressively" approaching not him but other drivers, using foul language, and "verbally assaulting" them.  Ms. Hokoana denied that she had disrespected drivers.  She acknowledged that she swore, raised her voice to be heard and joked around, just as her three male fellow supervisors did.  Ms. Hokoana asked who was accusing her and not the other supervisors, but neither her supervisor, L.C. Parker, nor Human Resources could tell her what she had allegedly said, when she had said it, and to whom she had supposedly made the comments. Ms. Hokoana pointed out that the male supervisors directly confronted and verbally insulted drivers, just as she was being accused of doing, and was informed that she would need to start documenting any things she heard that were inappropriate or offensive.  As far as Ms. Hokoana is aware, Defendant took no action to investigate whether other supervisors engaged in the conduct of which she had been accused, and she was never provided with details regarding her alleged transgressions.

11.     Subsequently, in March 2019, the same driver who accused Ms. Hokoana of verbally assaulting drivers, Scott Rouse, yelled at her when she assigned the lowest seniority driver to a route the driver did not want, telling her that she could not do that.  When Ms. Hokoana attempted to explain that this driver was the only one qualified to drive a particular truck, Mr. Rouse continued to raise his voice to her and tell her that the driver did not have to do the work she had assigned.  Since this was the same person who had complained about how Ms. Hokoana spoke to people, she stayed quiet and informed him that he could file his complaint with the Operations Manager or file a grievance. Ms. Hokoana reported the incident to her supervisor and Human Resources but received no response.

12.     In May 2019, Defendant also disciplined Ms. Hokoana for ostensibly not responding to a driver incident in March 2019.  The driver in question, however, was a direct report of another supervisor, Dan Lydon, who was supposed to be at work but had left the facility without telling her.  Ms. Hokoana was the backup to the Operations Manager, who was not on site, and she was therefore responsible for handling payroll for the entire operations team and ensuring that all the relevant information had been entered into the payroll system.  Ms. Hokoana understood that for everyone to be paid on time, she needed to enter all the information by 10:00 a.m. Arizona time.  When the dispatcher contacted Ms. Hokoana and told her she needed to respond to a driver incident, she asked him to call a third Operations Supervisor who was on his way in and also asked him if he had called Mr. Lydon.  The dispatcher informed her that Mr. Lydon had told him that Ms. Hokoana needed to respond.  A few minutes later, Ms. Hokoana contacted the dispatcher and asked if she still needed to go, and he told her that Mr. Lydon was on his way.  Two months later, Ms. Hokoana received a write up for not responding to the driver's call.

13.     Mr. Lydon regularly left the facility when he was supposed to be working, leaving Ms. Hokoana alone to handle the morning crew, often without telling her.  His direct reports would therefore contact Ms. Hokoana, requiring her to deal with them as well as her own crew, on top of the other extra work Defendant had assigned her.  Mr. Lydon would also frequently refuse to answer his phone.  As a result, his drivers would call Ms. Hokoana.  Mr. Lydon would sometimes be sitting right next to her and treat her like an answering service, telling her to let the driver know he would call them back.  Defendant, however, would criticize Ms. Hokoana for not answering the phone right away.  Ms. Hokoana reported to her supervisor that Mr. Lydon regularly disappeared during working hours, leaving her to supervise his crew and yet nothing was done.

14.     In approximately December 2019, Ms. Hokoana's then-supervisor, L.C. Parker, announced that he was relocating to another location and asked to teach her additional responsibilities to cover for him until his replacement was selected.  Ms. Hokoana consequently became responsible for his daily reports, ordering safety supplies, replacing and ordering new phones and radios for the drivers, ordering equipment, as well as other job duties that had been performed by Mr. Parker.  Although other employees were assigned to complete some of these projects, the responsibility fell

entirely on Ms. Hokoana.  As far as Ms. Hokoana is aware none of her co-workers were criticized or disciplined for failing to complete these projects.  When the new Operations Manager, Jesse Galicia, was hired, she continued to perform many of these duties as Mr. Galicia began to slowly take them over.  Ms. Hokoana, however, continued to do payroll for all the operations personnel until the system changed and all Operations Supervisors were required to be responsible for their own drivers.  Ms. Hokoana was still responsible for training the other supervisors regarding how to use the system and how to keep attendance for the drivers in compliance with the Collective Bargaining Agreement, resulting in her working 12 to 15 hour days on a regular basis.

15.     In March 2020, the residential shop steward, Joel Nevarez, confronted Ms. Hokoana aggressively and yelled at her when he disagreed with her decision to send lower casual pool drivers home with no pay because there was not enough work for them.  She tried to explain that she was following instructions she'd received from her superiors, but he continued to yell at her and to give the drivers instructions contrary to those from Ms. Hokoana.  When Mr. Galicia came in later that morning, Ms. Hokoana reported to him what had happened.  Upon information and belief, the dispatcher also contacted Human Resources regarding the incident because this was not the first time Mr. Nevarez had verbally attacked Ms. Hokoana or someone else.  Yet Ms. Hokoana received no response from either Mr. Galicia or Human Resources in response to her report.

16.     In September 2020, Defendant gave Ms. Hokoana a "Last Chance Agreement."  Previously, Ms. Hokoana had received an email from the insurance company, forwarding pictures from a customer who claimed that one of Defendant's drivers had damaged a gate several months previously.  Ms. Hokoana recognized one of her drivers in the pictures and asked Mr. Galicia how she should handle it.  He told her to just get the claim in the system, identifying the driver and to get his statement about what happened later.  Ms. Hokoana did as she was instructed but when she followed up with the driver, he told her it was not him but another driver.  Upon information and belief, Mr. Lydon, Mike Daniels, and John Groenwold had all made mistakes in entering claims under the wrong name and yet had not been disciplined.

17.     During the disciplinary meeting regarding the Last Chance Agreement, Mr. Galicia criticized Ms. Hokoana for allowing drivers to "goad" her into a reaction.  Mr. Galicia stated that he

knew the drivers purposely tried to get Ms. Hokoana to do or say something in anger.  The General Manager, Steve Viamari, agreed with Mr. Galicia and acknowledged aloud that he knew the drivers did that.  The Human Resources representative was present when these statements were made, but Defendant took no action – nor had it taken any action in the past – to address how Ms. Hokoana was treated by her male co-workers, aside from placing responsibility on her not to be provoked.

18.     In January 2021, Ms. Hokoana was off work for a few days.  When she returned to work, Mr. Lydon informed her that one of her drivers had an accident that caused severe damage to the truck.  He told her that the General Manager wanted the driver written up and that she had to do it.  Ms. Hokoana protested that because she had not been at work, she did not know what the investigation revealed and had none of the details.  Mr. Lydon indicated that he did not report the damage and did not conduct a full investigation.  Ms. Hokoana reported all of this to Mr. Galicia.  Upon information and belief, Mr. Lydon was not disciplined for these events.

19.     Ms. Hokoana's decisions were constantly questioned and challenged by the drivers in a manner and with a frequency the other Operation Supervisor's decisions were not.  Management knew of this and, rather than messaging support for Ms. Hokoana as the only female Operations Supervisor, they would participate in undermining her authority.

20.     Throughout Ms. Hokoana's employment, she was also routinely subjected to derogatory comments and rumors about her relationships with other employees.  Whenever Ms. Hokoana was off work, she would subsequently learn of rumors circulated about her absence.  When, for example, she had a medical leave in October and November of 2020, she learned that drivers were speculating that she was taking care of a driver who was out for baby bonding leave, out taking care of another driver who was recovering from surgery, out having plastic surgery, or out having the secret baby of one of the drivers.  During another medical leave, she learned that Dan Lydon was telling other employees that she was taking care of a driver recovering from surgery.  From the beginning of her employment, Ms. Hokoana's co-workers, including other supervisors, also teased her mercilessly about a driver who supposedly was in love with her.  They would tell her that he watched her "ass" every time she walked by, would get excited when she bent over or gave him attention, and had sexual fantasies about her.  When he started dating someone, they would ask her if

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

she was heartbroken and tell her not to be jealous.  The teasing continued until Ms. Hokoana left the company.  Anytime Ms. Hokoana did a ride along with a driver, she heard claims that she was having sex with them in the truck.  There were also rumors circulated that Ms. Hokoana was having sex with several drivers.  Ms. Hokoana brought these rumors to the attention of her supervisor, L.C. Parker, but he took no action and discouraged her from complaining further.

21.     Ms. Hokoana also brought potentially fraudulent activity by her co-workers to Defendant's attention.  In December 2018, she was informed by several drivers that illegal "roll off" boxes were sitting on sites in Union City, Fremont, and the Newark area.  The boxes were apparently not being paid for but were being emptied by someone within the company.  The drivers reported that another Operations Supervisor was having his drivers set up and deliver boxes to people who were not paying the company for them and that he had been doing so for years.  Ms. Hokoana reported this information to her supervisor and to Human Resources.  Shortly after this, she was accused of yelling and cursing at the drivers.  A few weeks before her termination, Ms. Hokoana also reported another instance of a driver who appeared to be performing work for someone who was not paying the company.

22.     From February 22 to February 27, 2021, Ms. Hokoana was out sick.  On February 27, 2021, a driver informed her that a rumor was going around that she was going to be fired. Ms. Hokoana contacted Mr. Galicia to complain about the harassment she faced while employed by Defendant, including her inability to take a sick day without some kind of rumor being circulated about her.  She told him that she wanted to make an official harassment complaint.

23.     When Ms. Hokoana returned to work in March 1, 2021, a driver approached her and told her that he had heard the rumor that she was being terminated.  The driver told her that he heard the rumor from another driver who had not been with the company in more than a year.  Later in the morning, another driver approached and told her that he had also heard the rumor.

24.     On March 2, 2021, Ms. Hokoana learned that the rumors were true.  In a meeting with her supervisor, the General Manager, and a Human Resources Representative, she was terminated for poor performance.  She did not receive her final paycheck at that time and instead received it two days later.

## VI.   FIRST CAUSE OF ACTION
**Discrimination Based on Gender**
**In Violation of California Fair Employment and Housing Act ("FEHA")**
**[Cal. Gov. Code §12940(a)]**

25.    Plaintiff realleges and incorporates by reference the foregoing, as though fully set forth herein.

26.    At all times material to this complaint, Plaintiff was an employee of Defendant.

27.    Defendant is an employer within the meaning of the FEHA.

28.    As set forth and described above, Defendant terminated Plaintiff's employment and treated her differently from her male co-workers with respect to the terms and conditions of her employment, including, but not limited to, subjecting her to disparate discipline.

29.    Plaintiff's gender was a substantial motivating reason for Defendant's conduct.

30.    As a direct and further proximate result of the above violations of her rights, Plaintiff has suffered damages in the form of past and future wage loss, other pecuniary losses, and emotional distress in an amount to be proven at trial.

31.    As a result of Defendant's unlawful acts, Plaintiff is entitled to compensatory damages, equitable relief, attorneys' fees and costs.

32.    Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice.  Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

## VII.   SECOND CAUSE OF ACTION
**Harassment Based on Gender**
**In Violation of California Fair Employment and Housing Act ("FEHA")**
**[Cal. Gov. Code §12940(j)]**

33.    Plaintiff realleges and incorporates by reference the foregoing, as though fully set forth herein.

34.    At all times material to this complaint, Plaintiff was an employee of Defendant.

35.    Defendant is an employer within the meaning of the FEHA.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

36.     California Government Code §12940(j), prohibits an employer from harassing an employee on the basis of her gender.

37.     The above-described actions and omissions of Defendant described above constitute harassment of Plaintiff on account of her gender.  This harassment included, but was not limited to the following:  making sexual comments about Plaintiff, attempting to provoke Plaintiff to anger, and spreading rumors about Plaintiff's sex life.

38.     Plaintiff was subjected to working in a severe, persistent or pervasively hostile work environment, which interfered with her work performance, denied her employment privileges, and adversely affected the terms and conditions of her job on the basis of her gender.

39.     The harassing conduct to which Plaintiff was subjected was so severe, widespread or persistent that a reasonable woman in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

40.     Plaintiff considered the work environment to be hostile or abusive.

41.     As a direct and further proximate result of the above violations of her rights, Plaintiff has suffered damages in the form of past and future wage loss, other pecuniary losses, and emotional distress in an amount to be proven at trial.

42.     As a result of Defendant's unlawful acts, Plaintiff is entitled to compensatory damages, equitable relief, attorneys' fees, and costs.

43.     Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice.  Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

## VIII.   THIRD CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy

44.     Plaintiff realleges and incorporates by reference the foregoing, as though fully set forth herein.

45.     Defendant's actions in terminating Plaintiff under the circumstances alleged herein

violate the fundamental policies of the State of California embodied, among elsewhere, in the FEHA. Defendant's conduct in terminating Plaintiff under these circumstances constitutes a wrongful termination in violation of public policy.

46.     As a direct and further proximate result of the above violations of her rights, Plaintiff has suffered damages in the form of past and future wage loss, other pecuniary losses, and emotional distress in an amount to be proven at trial.

47.     As a result of Defendant's unlawful acts, Plaintiff is entitled to compensatory damages, equitable relief, and costs.

48.     Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice.  Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

## IX.   FOURTH CAUSE OF ACTION
### Failure to Prevent Harassment, Discrimination, or Retaliation
### [Cal. Gov. Code §12940(k)]

49.     Plaintiff realleges and incorporates by reference the foregoing, as though fully set forth herein.

50.     At all times material to this complaint, Plaintiff was an employee within the meaning of the FEHA.

51.     Defendant is an employer within the meaning of the FEHA.

52.     California Government Code § 12940 (k) requires employers to take all reasonable steps necessary to prevent discrimination, retaliation, and harassment from occurring.

53.     Plaintiff was subjected to discrimination and harassment.

54.     Defendant failed to take all reasonable steps to prevent discrimination and/or harassment from occurring.

55.     As a direct and further proximate result of the above violations of her rights, Plaintiff has suffered damages in the form of past and future wage loss, other pecuniary losses, and emotional distress in an amount to be proven at trial.

56.     As a result of Defendant's unlawful acts, Plaintiff is entitled to compensatory damages, equitable relief, attorneys' fees, and costs.

57.     Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice.  Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

## X.     FIFTH CAUSE OF ACTION
### Failure to Pay Wages in a Timely Manner
### [Cal. Labor Code § 201 and 203]

58.     Plaintiff realleges and hereby incorporates by reference the foregoing paragraphs, as though fully set forth herein.

59.     Labor Code section 201 requires an employer to pay an employee all wages earned and unpaid immediately at the time of discharge.

60.     Labor Code section 203 provides that if an employer willfully fails to pay all compensation due promptly upon separation, as required by Sections 201, the employer shall be liable for waiting time penalties in the form of continued compensation for up to 30 work days.

61.     Defendant willfully failed to pay Plaintiff all compensation due to her immediately upon her discharge.

62.     As a result of Defendant's unlawful conduct as alleged herein, Plaintiff has sustained economic damages, including, but not limited to, unpaid wages and lost interest in an amount to be determined at trial.

63.     Plaintiff is thus entitled to recover an additional sum pursuant to Labor Code sections 201 and 203 equal to a day's wages for each of thirty (30) days, plus interest, plus attorneys' fees and costs.

WHEREFORE, Plaintiff requests judgment as is further set forth below.

## XI.     SIXTH CAUSE OF ACTION
### Retaliation
### [Violation of Labor Code §1102.5]

64.     Plaintiff realleges and hereby incorporates by reference the foregoing paragraphs, as

though fully set forth herein.

65.    At all times applicable to this action, the provisions of Labor Code section 1102.5 was in full force and effect.

66.    California Labor Code section 1102.5 prohibits retaliation against an employee who makes a complaint about a violation of law to an employee with authority to investigate, discover, or correct the violation. It further prohibits retaliation against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

67.    As set forth above, Plaintiff reported conduct by her co-workers that she reasonably believed to be in violation of the law, including but not limited to California Penal Code sections 484 and 487.

68.    As a result of her reports of behavior she reasonably believed to be illegal, Plaintiff was subjected to harassment by her co-workers and terminated.

69.    As a result of the Defendant's violations of his rights, Plaintiff has suffered, and continues to suffer, damages, as set forth above.

WHEREFORE, Plaintiff requests judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1.    Compensatory damages, including but not limited to wages, earnings, and other compensation, according to proof, and interest on these amounts;

2.    For a declaratory judgment that Defendant has violated the California Fair Employment and Housing Act, California Labor Laws and public policy, as alleged herein;

3.    For a permanent and mandatory injunction prohibiting Defendant, its officers, agents, employees, affiliated companies, and all those working in concert with them, from committing future violations of the laws and public policies described herein;

4.    Attorneys' fees and costs pursuant to Government Code Section 12965, 1102.5(j), and any other applicable statute;

5.    For punitive damages in an amount to be determined according to proof;

1    6.      Costs of suit;

2    7.      For such other and further relief as the Court deems just and proper.

3  DATED:  May 2, 2022                    LEVY VINICK BURRELL HYAMS LLP

4

5                                         By: _____

6                                             Darci E. Burrell
                                          Attorneys for Plaintiff Allison Hokoana

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury for each and every claim for which she has a right to jury trial.

DATED: May 2, 2022

LEVY VINICK BURRELL HYAMS LLP

By: _____
    Darci E. Burrell
Attorneys for Plaintiff Allison Hokoana

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL